IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                                  Criminal Case No. 3:11cr64-1

JAMES DERRICK BAYLOR,

      Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on two motions.  The first is Defendant James Derrick Baylor's Motion to Reduce Sentence Pursuant to Section 603(b) of the First Step Act (the "Motion for Compassionate Release").  (ECF No. 261.)  The United States responded in opposition and Mr. Baylor replied.  (ECF Nos. 266, 271.)  The second is Mr. Baylor's Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c) and U.S.S.G. Amendment 821 (the "821 Motion"), (ECF No. 287), to which the United States has provided a non-opposition, (ECF No. 288).

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process.  For the reasons that follow, the Court will grant in part the Motion for Compassionate Release.  (ECF No. 261.)  The Court will deny as moot the 821 Motion.  (ECF No. 287.)

## I.  Background

### A.     Mr. Baylor's Underlying Offense

On March 1, 2011, James Baylor, along with his brother Troy Baylor,[1] was charged in a thirteen-count indictment.[2]  The Indictment spoke to two armed robberies:  one on November 30, 2010, and a second on December 21, 2010.  On February 1, 2012, the Court granted the United States' Motion to Dismiss Counts Five through Ten of the Indictment.  Two days later, on February 3, 2012, a jury convicted James Baylor on the seven remaining counts:

| | |
|---|---|
| Count 1: | Conspiracy to Interfere with Commerce by Threats and Violence between November 30, 2010 and December 21, 2010; |
| Count 2: | Interference with Commerce by Threats and Violence on November 30, 2010; |
| Count 3: | Use and Carry a Firearm in Furtherance of a Crime of Violence on November 30, 2010; |
| Count 4: | Possession of a Firearm by Felon on November 30, 2010; |
| Count 11: | Interference with Commerce by Threats and Violence on December 21, 2010; |
| Count 12: | Use and Carry Firearm in Furtherance of a Crime of Violence on December 21, 2010; and, |
| Count 13: | Possession of Firearm by Felon on December 21, 2010.  (ECF No. 87, at 1–3.) |

---

[1] For clarity, the Court generally will refer to James Baylor and Troy Baylor by their first and last names.  Whenever this opinion speaks to "Mr. Baylor," however, it refers to James Baylor.

[2] One count of conspiracy to interfere with commerce by threats and violence, in violation of Title 18, United States Code, § 1951(a) (Count One); four counts of interference with commerce by threats and violence, commonly known as Hobbs Act Robbery, in violation of Title 18, United States Code, § 1951(a) (Counts Two, Five, Eight, and Eleven); four counts of use and carry a firearm in furtherance of a crime of violence, in violation of Title 18, United States Code, § 924(c) (Counts Three, Six, Nine, and Twelve); and four counts of possession of a firearm by a convicted felon, in violation of Title 18, United States Code, § 922(g)(1) (Counts Four, Seven, Ten, and Thirteen). (ECF No. 1, at 1.)

James Baylor was forty-two years old at the time he committed these offenses. (ECF No. 95, at 4.)

Prior to his April 24, 2012 sentencing, the probation officer prepared the Presentence Investigation Report ("PSR"), summarizing the conduct of James Baylor's underlying offenses. (ECF No. 95.) James Baylor's convictions stem from two armed robberies he committed with his brother, Troy Baylor, in late 2010. (ECF No. 95, at 10–12.) On November 30, 2010, James and Troy Baylor approached an employee outside of a Family Dollar store. (ECF No. 95, at 10.) James Baylor displayed a handgun and demanded the employee take them inside to empty the store's safe. (ECF No. 95, at 10.) As the employee struggled to open the safe, James Baylor threatened her. (ECF No. 95, at 10–11.) Shortly thereafter, James Baylor pointed his handgun at a second employee who was trying to stop the robbery and instructed her to "back-off." (ECF No. 95, at 11.) James and Troy Baylor took $501.00 from the safe and fled. (ECF No. 95, at 11.)

Just weeks later, on December 21, 2010, James and Troy Baylor committed another robbery, this time at Tommy Wilson's Vans & Autos. (ECF No. 95, at 11.) As two employees worked on a vehicle in the shop, both brothers walked in. (ECF No. 95, at 11.) James Baylor pointed his handgun at both victims. (ECF No. 95, at 11.) Troy Baylor took $610.00 from the first victim, and James Baylor took $600.00 from the second. (ECF No. 95, at 11.) The second victim began arguing with James Baylor that escalated into James Baylor striking the second victim in the face and head with his handgun. (ECF No. 95, at 11.) Troy Baylor then took the handgun and pointed it at the second victim, prompting the first victim to try to gain control over the handgun. (ECF No. 95, at 12.) During this confrontation, the handgun was dropped, and the Baylor brothers fled. (ECF No. 95, at 12.)

**B.**    **James Baylor's Offense Level and Criminal History Computation**

The original PSR also summarized Mr. Baylor's offense level and his criminal history. (ECF No. 95 ¶¶ 125–126.)  James Baylor's Total Offense Level was calculated to be 27.  (ECF No. 95, at 52.)  James Baylor's criminal history score subtotaled 11 points.[3]  (ECF No. 95, at 55.) He received a two-point addition to his criminal history score computation pursuant to U.S.S.G. § 4A1.1(d) (2009) because he committed the underlying offense "while under [a] criminal justice sentence"; he was on parole for New York convictions for the Criminal Sale of Marijuana and Conspiracy in the Second Degree for Intent to Perform a Class A Felony.  (ECF No. 95, at 56.) This led to 13 total criminal history points and a corresponding Criminal History Category of VI. (ECF No. 95, at 56.)

**1.**    **Original Sentence Calculation**

Pursuant to the Sentencing Guidelines in place at that time, Mr. Baylor's Total Offense Level of 27 and Criminal History Category of VI resulted in a recommended sentencing range of 130–162 months' imprisonment, plus 300 months' imprisonment consecutive.  (ECF No. 95, at 57.)  However, the two counts for Possession of a Firearm by a Felon (Counts Four and Thirteen) had statutory maximum sentences of 120 months' imprisonment.  (ECF No. 95, at 57.) Separately, Count Three's conviction for using a firearm in furtherance of a crime of violence in November of 2010 had an 84-month mandatory consecutive sentence.  And Count Twelve's conviction for the same firearm use charge in December 2010 carried with it a "stacked" 300-month mandatory consecutive sentence in addition to all others.  (ECF No. 95, at 57.)

---

[3] James Baylor's criminal history contains over twenty-five offenses starting from the age of thirteen.  (ECF No. 95, at 15–26, 53–55.)  This history includes fifteen theft-related offenses, of which at least three involved physical threats or drawn weapons, despite the fact that the amount of money obtained often fell below $1,000.  (ECF No. 95, at 15–26, 53–55.)

On April 24, 2012, the Court sentenced James Baylor to the low end of the Sentencing

Guideline Range.  That sentence consisted of:

(1)  130 months' imprisonment on Counts 1, 2, and 11 (concurrent to Counts 4 and 13);
(2)  120 months' imprisonment on Counts 4 and 13 (concurrent to Counts 1, 2, and 11);
(3)  84 months' imprisonment on Count Three to be served consecutive to Counts 1, 2, 4, 11, and 13; and,
(4)  300 months' imprisonment on Count Twelve to be served consecutively to all other counts.  (ECF No. 106, at 3.)

All told, the Court sentenced James Baylor to a term of 514 months' imprisonment, the

low end of the then-applicable guideline range. (ECF No. 106, at 3.)

### 2.  James Baylor's Sentencing Guidelines if Sentenced Today

#### a.  Amendment 821 Retroactivity

On November 1, 2023, amendments to the advisory Sentencing Guidelines took effect.

In relevant part, Amendment 821, among other changes, (1) reduces "status points" for certain

offenders with less serious criminal histories and (2) provides for a decrease of two offense

levels for individuals with no criminal history points and whose offense did not involve specific

aggravating factors.  U.S. Sentencing Comm'n., *Amendment to the Sentencing Guidelines*

(August 31, 2023).[4]  On August 24, 2023, the Commission voted to give retroactive effect to

these provisions of Amendment 821.  *Id.*; *see also* U.S. Sentencing Comm'n, *U.S. Sentencing*

*Commission Votes to Allow Retroactive Sentence Reductions and Announces its Next Set of*

*Policy Priorities* (Aug. 24, 2023), available at https://www.ussc.gov/about/news/press-

releases/august-24-2023 (last accessed June 3, 2024).

---

[4] This document is available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202308_RF-retro.pdf [https://perma.cc/7J5V-YKNY].

Under Amendment 821 at § 4A1.1(e)[5], Mr. Baylor would receive only one, not two, additional criminal history point for committing the offense while under any criminal justice sentence.  This provision of Amendment 821 applies retroactively.  U.S.S.G. § 1B1.10(d) (2023).

On June 17, 2024, a Probation Officer prepared a Corrected Sentencing Guideline Recalculation Worksheet in response to the November 1, 2023 Sentencing Guideline Amendments.  (ECF No. 289.)  With this adjustment, James Baylor's total criminal history points would amount to 12 and the resulting Criminal History Category would be V, not VI.  (ECF No. 289, at 3.)

### b. Error in the 2012 PSR Calculation

During the Amendment 821 recalculation, the Probation Officer preparing the worksheet identified that a miscalculation had occurred in James Baylor's original PSR.  (ECF No. 289, at 2 n.3.)  In the original PSR, certain counts were improperly "grouped".  (ECF No. 289, at 2 n.3.)  Had the grouping occurred correctly, James Baylor's Total Offense Level would have been 26, not 27.  (ECF No. 289, at 2 n.4.)

With the corrected Total Offense Level of 26 and a Criminal History Category of V, the recommended sentencing range would be 110–137 months' imprisonment, plus 384 months' imprisonment consecutive.  (ECF No. 283, at 2 n.5.)[6]

### 4. James Baylor's Current Placement

Mr. Baylor is currently housed at USP McCreary in Pine Knot, Kentucky.  *See Fed. Inmate Locator*, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited June 18,

---

[5] Under the November 1, 2023 Sentencing Guideline Amendments, the provisions of U.S.S.G. § 4A1.1(d) (2021) transitioned to U.S.S.G. § 4A1.1(e) (2023).

[6] Had the Total Offense Level of 26 been applied in the original PSR when his Criminal History Category was VI, Mr. Baylor's resulting sentencing range would have been "120[–]150 months plus 384 months consecutive."  (ECF No. 289, at 2 n.5.)

2024); *USP McCreary*, BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/mcr/
(last visited May 14, 2024).  The Bureau of Prisons ("BOP") lists Mr. Baylor's projected release
date as April 9, 2048. *Fed. Inmate Locator*, BUREAU OF PRISONS, https://www.bop.gov/
inmateloc/ (last visited June 18, 2024).  Mr. Baylor has served 13 years, 5 months, and 16 days
as of June 18, 2024, which is approximately 31% of his 514-month sentence.  (*See* ECF No. 265,
at 1.)

### C.    Mr. Baylor's Motion for Compassionate Release

On November 30, 2022, James Baylor, acting through counsel, filed the instant Motion
for Compassionate Release. (ECF No. 261.)  In the Motion for Compassionate Release, Mr.
Baylor discusses his rehabilitation while in prison, the sentencing disparity resulting from his
stacked § 924(c) convictions,[7] and the advanced age of eighty years old that he will be when
released from prison. (ECF No. 261, at 8.)  In support of his claims of rehabilitation, Mr. Baylor
references his completion of several programs aimed towards recovery and rehabilitation, as well
as his participation in educational programs such as legal research. (ECF No. 261, at 2.)  Mr.
Baylor also contends that, if sentenced today, Count Twelve would result in a term of 84-months'
imprisonment, rather than 300-months' imprisonment, due to Congress ending the practice of
stacking multiple 18 U.S.C. § 924(c) convictions in the same prosecution.  (ECF No. 261, at 2.)

---

[7] Pursuant to the Sentence Guidelines in effect at the time James Baylor committed his
offenses, a second or subsequent count of conviction under § 924(c) triggered a higher
mandatory minimum penalty, as well as mandatory "stacking" of these sentences for each count
of conviction.  This was so because, in *Deal v. United States*, 508 U.S. 129 (1993), the United
States Supreme Court held that even when multiple counts under § 924(c) were in the same
indictment, the conviction on the first count did not have to be final before triggering the
mandatory increases and stacking provisions.  Under *Deal*, a defendant such as Mr. Baylor who
faced two or more counts for possessing and brandishing a firearm, in violation of
§ 924(c)(1)(A)(ii), in a single charging instrument would receive a mandatory minimum sentence
of seven years on the first count, and twenty-five years on each additional count.

Mr. Baylor requests a reduction of his sentence to 298 months' imprisonment. (ECF No. 261, at 2.)

The United States opposes that reduction. (ECF No. 266.) The United States asserts that Mr. Baylor's stacked 18 U.S.C. § 924(c) sentences are not an extraordinary and compelling reason for relief. (ECF No. 266, at 9–11.) The United States also contends that the sentencing factors set forth in 18 U.S.C. 3553(a)[8] weigh against relief. (ECF No. 266, at 11–16.)

---

[8] Section 3553 of Title 18 of the United States Code states in pertinent part:

(a) . . . The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**D.** **Mr. Baylor's Motion for Sentence Reduction Under Amendment 821**

On April 2, 2024, James Baylor, acting through counsel, filed the 821 Motion also addressed here. (ECF No. 287.) In the 821 Motion, Mr. Baylor asserts that "the Sentencing Commission has lowered the guideline range applicable to Mr. Baylor's sentence" and, therefore, this Court should reduce his sentence. (ECF No. 287, at 3–4.) Additionally, Mr. Baylor asks this Court to "consider that the correct offense level in this case should be 26, not 27," as was improperly calculated in the original PSR. (ECF No. 287, at 4.)

James Baylor recognizes that he has sustained multiple severe disciplinary infractions while incarcerated but contends that he has "already been punished for that conduct in the form of loss of privileges, disciplinary segregation for 127 days, and loss of 196 days of good time conduct." (ECF No. 287, at 6–7.) Additionally, Mr. Baylor states that he has not received a single infraction in over three years prior to seeking relief from the Court. (ECF No. 287, at 7.)

Finally, Mr. Baylor identifies that he has significant health issues that assist in a finding that he does not pose a danger to society if released. (ECF No. 287, at 7–8.) Mr. Baylor states that he has used a wheelchair for the past three years, "has had two toes amputated, cannot move his left fingers, and has glaucoma in one eye." (ECF No. 287, at 8.) Mr. Baylor is also involved with his family and with the church and believes that his "robust family network will allow him to transition back into the community safely and effectively." (ECF No. 287, at 8.)

James Baylor ultimately asks for a 24-month reduction in his sentence based on the 821 Amendment. (ECF No. 287, at 8.) The United States does not oppose this reduction based on

---

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

the 821 Amendment but, as noted earlier, does contest the greater reduction for compassionate release.  (ECF No. 288, at 1.)

## II.  Compassionate Release Under the First Step Act of 2018

### A.    Legal Standard

Prior to the First Step Act of 2018, an individual could not petition the district court for relief on compassionate release grounds without approval from the BOP.  *See Coleman v. United States*, 465 F. Supp. 3d 543, 546 (E.D. Va. 2020).  In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to petition the courts directly for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[9]  First Step Act of 2018, Pub. L. No.

---

[9] Section 3582(c) states, in pertinent part:

The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

115–391, 115th Cong. (2018).  Under the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences.  *Coleman*, 465 F. Supp. 3d at 546.

Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct.  *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)).  However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification.  *See* 28 U.S.C. § 994(t).[10]

## B. <u>Exhaustion of Administrative Remedies</u>

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."  18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020); *Casey v. United States*, No.

---

[10] 28 U.S.C. § 994(t) states:

The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.  *Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.*

28 U.S.C. § 994(t) (emphasis added).

4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020); *see also United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (same).

In his Motion for Compassionate Release, Mr. Baylor submits, and the United States does not dispute, that he has properly exhausted his request for compassionate release pursuant to U.S.C. § 3582(c)(1)(A).  (*See* ECF No. 261, at 5; ECF No. 261-4, at 1–4.)  This Court so finds.

### C.    Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction[.]"  18 U.S.C. § 3582(c)(1)(A)(i).  Congress did not define "extraordinary and compelling reasons" in the statute.  The United States Sentencing Commission does, however, further define "extraordinary and compelling reasons."  U.S.S.G. § 1B1.13(b); *see United States v. Burrell*, No. 3:04-CR-364 (JAG), 2023 WL 7726404, at *4 n.7 (E.D. Va. Nov. 15, 2023).  The Sentencing Commission

> addressed the issue in a policy statement, United States Sentencing Guideline § 1B1.13, which provided the BOP with several categories of extraordinary and compelling reasons to consider.  For years following the passage of the First Step Act, the Sentencing Commission failed to update § 1B1.13 to account for motions filed by defendants, meaning the policy did not bind the courts when presented with a defendant's motion for compassionate release.  A court therefore remained empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.

*Burrell*, 2023 WL 7726404, at *4, n.7 (cleaned up) (citing *McCoy*, 981 F.3d at 276, 281–82, 284).

The 2021 Sentencing Guidelines enumerated four bases on which to evaluate a motion for compassionate release.  U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (U.S. SENT'G COMM'N 2021) identified four bases to establish extraordinary and compelling reasons for release:

> (A) medical conditions;
> (B) age;

(C) family circumstances; and,

(D) other reasons.

U.S.S.G. § 1B1.13 cmt., n.1(A)–(D).

In 2023, the United States Sentencing Commission published new sentencing guidelines amendments (the "2023 Sentencing Guidelines Amendments" or "2023 Amendments"). Pursuant to the 2023 Amendments, the Sentencing Guidelines now identify six instructive categories of extraordinary and compelling reasons that may allow for a sentence reduction.[11]

These are:

(1) certain medical circumstances of the defendant, such as terminal illness or the inability to receive specialized medical care while incarcerated, [U.S.S.G.] § 1B1.13(b)(1)[12];

(2) the defendant's age . . . is at least 65 years old, *id.* § 1B1.13(b)(2)[13];

(3) the defendant's family circumstances, *id.* § 1B1.13(b)(3)[14];

(4) the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, *id.* § 1B1.13(b)(4) [15];

(5) 'any other circumstances or combination of circumstances . . . similar in gravity to' the circumstances 'described in paragraphs (1) through (4).' *Id.* § 1B1.13(b)(5) [16], and,

---

[11] *See* Appendix A, U.S.S.G § 1B1.13(b) (2023).

[12] *See* App. A, at **U.S.S.G. § 1B1.13(b)(1)**; *cf.* Appendix B, **U.S.S.G. § 1B1.13 cmt. n.1(A).**

[13] *See* App. A, at **U.S.S.G. § 1B1.13(b)(2)**; *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(B).**

[14] *See* App. A, at **U.S.S.G. § 1B1.13(b)(3)**; *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(C).**

[15] *See* App. A, at **U.S.S.G. § 1B1.13(b)(4).**

[16] *See* App. A, at **U.S.S.G. § 1B1.13(b)(5)**; *cf.* App. B., at **U.S.S.G. § 1B1.13 cmt. n.1(D).**

(6) the defendant received an 'unusually long sentence,' *id.*
§ 1B1.13(b)(6).[17]

*United States v. Tucker*, 2023 WL 8357340, at *5 (D. Md. Dec. 1, 2023).

The United States Court of Appeals for the Fourth Circuit explained—even before the 2023 Sentencing Guidelines Amendments—that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. The Fourth Circuit has further illuminated that:

> [w]hen Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances—when sufficiently extraordinary and compelling—than to society's interests in the defendant's continued incarceration and the finality of judgments.

*United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022).

Since *McCoy* and *Hargrove*, the 2023 Amendments have taken effect. These Amendments clarify the Commission's view on what could constitute "extraordinary and compelling reasons" for a sentence reduction under the First Step Act. *See Burrell*, 2023 WL 7726404, at *4 n.7 ("[t]he Fourth Circuit has yet to address the impact the amended Sentencing Guidelines have on *McCoy* and similar rulings or precisely how courts should apply the amended policy statement in motions for compassionate release, particularly motions filed before November 1, 2023."). The *McCoy* court has noted, however, that the Guidelines, while helpful, are merely advisory and do not bind the Court. "[D]istrict courts are 'empowered . . . to consider

---

[17] *See* App. A, at **U.S.S.G. § 1B1.13(b)(6).**

*any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

The United States Supreme Court has determined that "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence[.]" *Concepcion v. United States*, 597 U.S. 481, 500 (2022). District courts within the Fourth Circuit have decided that sentencing disparities resulting from intervening changes in the Fourth Circuit's interpretation of the sentencing guidelines can constitute an "extraordinary and compelling reason" for compassionate release.[18] *See, e.g., United States v. Redd*, 444 F. Supp. 3d 717, 723–724 (E.D. Va. 2020) (finding that the "gross disparity between the sentence Mr. Redd received and the sentence he would have received after the First Step Act . . . constitute[s] [an] extraordinary and compelling reason[] that warrant[s] a reduction to Mr. Redd's sentence"); *see also United States v. Fennell*, 570 F. Supp. 3d 357, 363 (W.D. Va. 2021) (finding that "the significant disparity between Fennell's current sentence and the [ten years reduced] sentence he would face today for the same offense provides an extraordinary and compelling basis for a sentence reduction under § 3582(c)(1)(A)"); *United States v. Arey*, 461 F. Supp. 3d 343, 350 (W.D. Va. 2020) ("The fact that if [the defendant] were sentenced today for the same conduct he would likely receive a [forty year] lower sentence than the one he is currently serving constitutes

---

[18] The 2023 Sentencing Guideline Amendments added subsection (c) to U.S.S.G. § 1B1.13, which provides that a change in the law, or in non-retroactive Guidelines amendments, ordinarily shall not be considered when determining whether extraordinary and compelling reasons exist. However, subsection (c) includes an important caveat: "if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." U.S.S.G. § 1B1.13(c) (2023).

an 'extraordinary and compelling' reason justifying potential sentence reduction under § 3582(c)(1)(A)").

A plethora of unpublished cases follow this same reasoning.  *See, e.g.*, *United States v. Banks*, 2022 WL 220638, at *2–3, *6 (W.D. Va. Jan. 25, 2022) (88-month difference between the low end of defendant's career offender sentencing range and the low end of the non-career offender sentencing range was "such [a] gross disparit[y] in sentencing" that it constituted an extraordinary and compelling circumstance); *United States v. Williams*, No. 1:14-CR-428 (TSE), 2021 WL 5827327, at *6–7 (E.D. Va. Dec. 8, 2021) (difference of "more than three years longer than the high end of the guidelines that would have applied under *Norman*"[19] warranted a reduction in defendant's sentence from 168 months to 125 months); *United States v. Huggins*, 2021 WL 3025459, at *4 (W.D. Va. July 16, 2021) (sentencing disparity of more than five years was a "gross disparity" and an "extraordinary and compelling" reason warranting a sentence reduction); *but see United States v. Hinton*, No. 2:15-CR-80 (MSD), 2022 WL 988372, at *5 (E.D. Va. Mar. 31, 2022) (three to six year sentencing disparity "not so drastic that it constitutes an extraordinary and compelling reason for relief").  When considering the 2018 congressional modifications to stacked penalties for § 924(c) convictions that are relevant here, the Fourth Circuit has specifically held that "courts legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." *McCoy*, 981 F.3d at 275, 285–86 (quoting *Redd*, 444 F. Supp. 3d at 723).

---

[19] *United States v. Norman*, 935 F.3d. 232 (4th Cir. 2019) (finding that defendant was subject to a lower guideline range because a drug conspiracy conviction did not constitute a "controlled substance offense" given that the statute of conviction "criminalize[d] a broader range of conduct than that covered by generic conspiracy").

Finally, the 2023 Sentencing Guidelines Amendments explain in greater detail what a court should consider when considering unusually long sentences as a basis for an extraordinary and compelling reason to grant compassionate release. The relevant section of U.S.S.G. § 1B1.13(b) reads:

> (6)    UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

## D.    Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the Section 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A); *Martin*, 916 F.3d at 397–98; *McDonald*, 986 F.3d at 412. The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed . . . to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect from the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

## III.  Analysis

After due consideration, the Court will grant in part the Motion for Compassionate

Release.  (ECF No. 261.)  Mr. Baylor submits, and the United States does not dispute, that he has

exhausted his administrative remedies.  (ECF No. 261, at 5.)  The Court will grant in part the

Motion for Compassionate Release upon finding that the sentencing disparity resulting from (1)

Mr.  Baylor's stacked § 924(c) convictions, (2) the error to the original PSR, and (3) Amendment

821 of the 2023 Sentencing Guideline Amendments offer an "extraordinary and compelling

reason" to support his request for relief.  18 U.S.C. § 3582(c)(1)(A)(i).  The Court also finds that

the sentencing factors set forth in 18 U.S.C. 3553(a) support a partial reduction in sentence.

### A.    The Disparity Between Mr. Baylor's Current Sentence and the Sentence He Would Receive Today Is an Extraordinary and Compelling Reason for Relief

The Court finds that James Baylor offers "extraordinary and compelling reasons" to

support his request for a reduction in his sentence.  18 U.S.C. § 3582(c)(1)(A)(i).  Three

circumstances support such a finding.

First, considering the specific circumstances of Mr. Baylor's offense, his 514-month

sentence is "disproportionate to both 'the seriousness of the offense and to what Congress now

deems appropriate for this kind of conduct.'"  *See McCoy*, 981 F.3d at 279 (quoting *United

States v. Bryant*, No. 95-202-CCB-3, 2020 WL 2085471, at *5 (D. Md. Apr. 30, 2020)).  The

underlying robberies are serious offenses, and James Baylor caused real and meaningful harm to

the individuals he and his brother threatened with a gun during these two robberies.  James

himself assaulted a victim with a gun during a robbery.  But that same extremely serious conduct

in Counts Three and Twelve would subject a defendant sentenced today to a mandatory

minimum sentence of 14 years' imprisonment, not the 32-year minimum applicable during Mr.

Baylor's sentencing in 2012.[20]  The resulting disparity between the two mandatory minimum sentences is 216 months, or 18 years.  The 18-year differential between the mandatory minimum guideline sentences in 2012 and 2024 patently constitutes a "gross disparity" between them.[21] *See* U.S.S.G. § 1B1.13(b)(6).

Second, an error occurred in the original PSR prepared for James Baylor.  When calculating Mr. Baylor's Total Offense Level, the original PSR grouped Count Four and Count Thirteen together.  (ECF No. 289, at 2 n.3; *see* ECF No. 95, at 52.)  But "pursuant to USSG §3D1.2(c), Count 4 should have been grouped with Counts 1(a) and 2, and Count 13 should have been grouped with Counts 1(b) and 11."  (ECF No. 289, at 2 n.3.)  This error resulted in Mr. Baylor receiving a Total Offense Level of 27 when it should have been 26.  (ECF No. 289, at 2 n.4.)  "An offense level of 26 combined with a criminal history category of VI results in a guideline imprisonment range of 120 to 150 months," not the 130 to 162 months that the original PSR indicated.  (ECF No. 289, at 2 n.5; ECF No. 95, at 57.)   While not every error in a PSR necessarily creates an extraordinary and compelling basis for compassionate release in and of itself, it is worthy of consideration given Mr. Baylor's case as a whole.

---

[20] The table below summarizes the differences in the statutory penalties applicable to Mr. Baylor before and after the First Step Act of 2018:

| | Original Penalty for two § 924(c)(1)(A)(ii) offenses in the same charging document | First Step Act (modifying mandatory penalties for stacked § 924(c)(1)(A)(ii) offenses) |
|---|---|---|
| Mandatory Minimum | 7 years (84 months) + 25 years (300 months) = 384 months | 7 years (84 months) + 7 years (84 months) = 168 months |

[21] Mr. Baylor has served at least ten years of the term of his imprisonment, further supporting the extraordinary and compelling reason for relief.  *See* U.S.S.G. § 1B1.13(b)(6).

Finally, under Amendment 821 at § 4A1.1(e), Mr. Baylor would receive only one additional criminal history point for committing the offense while under a criminal justice sentence. With this adjustment, and correcting the prior error in the PSR, Mr. Baylor's criminal history score would be a 12 and his Criminal History Category would be V, not VI.

With a Total Offense Level of 26 and a Criminal History Category of V, the recommended Guideline Range for Mr. Baylor today would be 110–137 months' imprisonment. (ECF No. 289, at 3 n.7.) Adding in the modified mandatory penalties for stacked § 924(c)(1)(A)(ii) offenses, Mr. Baylor's recommended guideline range would be 278–305[22] months if he were sentenced today, as opposed to the 514–546 months recommended at the time of his 2012 sentencing. These additional reductions result in a disparity of approximately 19-and-a-half years at the low end of the guidelines range, providing even greater credence to a finding of a "gross disparity" under U.S.S.G. § 1B1.13(b)(6). *See, e.g.*, *Fennell*, 570 F. Supp. 3d at 363 (finding that "the significant disparity between [the defendant's] current sentence and the [ten years reduced] sentence he would face today for the same offense provides an extraordinary and compelling basis for a sentence reduction under § 3582(c)(1)(A)").

**B.    The 3553(a) Factors Support a Reduction in Mr. Baylor's Sentence**

Even after finding extraordinary and compelling grounds for a sentence modification under § 3582(c)(1)(A), a court still must consider any applicable 18 U.S.C. § 3553(a) factors.

The Court finds that the nature and circumstances of the offense weigh in favor of granting him partial compassionate release. 18 U.S.C. § 3553(a)(1). The approximate 19-year

---

[22] *See* FN. 20. At the low end, the recommended sentence would be 110 months' imprisonment, plus 84 months' imprisonment on Count 3, plus 84 months' imprisonment on Count 12, which equals 278 months. At the high end, the recommended sentence would be 137 months' imprisonment, plus 84 months' imprisonment on Count 3, plus 84 months' imprisonment on Count 12, which equals 305 months.

disparity between the 2012 sentencing range and that which would apply now -- for the exact same violent conduct -- warrants relief. James Baylor seeks a reduction to a 298-month sentence. The Court cannot grant his request in full. Instead, the Court will impose a 305-month, or approximately a 25-and-a-half year sentence,[23] which would be the high end of his adjusted guideline range of 278-305 months' imprisonment.

First, this sentence is sufficient but not greater than necessary to reflect the violent robberies James Baylor undertook. It will adequately deter criminal conduct and protect the public. After the sentence reduction, Mr. Baylor will still have approximately twelve years left to serve. While he be sixty-eight years old upon release, this seemingly harsh reality flows in part from the fact that Mr. Baylor was 42 years old when he committed these offenses. That is an age when the likelihood of recidivism already should have waned. Upon release, Mr. Baylor will serve a three-year supervised release term which will both protect the public and assist him with reentry. (ECF No. 106, at 4.)

While Mr. Baylor's 305-month sentence will adequately deter criminal conduct, his criminal history[24] and his disciplinary infractions while in federal detention, (ECF No. 266-1), suggest that the Court's consideration of public safety and promoting respect for the law outweighs his request for the lesser 298-month sentence. Since his incarceration, James Baylor has incurred nine disciplinary infractions:

(1) Refusing Work on January 14, 2021;
(2) Fighting with Another Person on September 19, 2020;

---

[23] This reduction includes the 24-month reduction both parties agree should occur under the 821 Amendment. Therefore, James Baylor's 821 Motion, (ECF No. 287), is moot.

[24] As noted previously, Mr. Baylor's criminal history contains over twenty-five offenses starting from the age of thirteen. (ECF No. 95, at 15–26, 53–55.) This includes fifteen theft-related offenses, of which at least three involved physical threats or drawn weapons, despite the fact that the amount of money obtained often fell below $1,000. (ECF No. 95, at 15–26, 53–55.)

(3) Possessing a Dangerous Weapon on July 15, 2020;

(4) Assaulting without Serious Injury on July 1, 2020;

(5) Being Absent from Assignment on March 14, 2019;

(6) Possessing a Dangerous Weapon on July 1, 2017;

(7) Possessing a Dangerous Weapon on January 10, 2016;

(8) Assaulting without Serious Injury on March 12, 2014; and,

(9) Possessing Unauthorized Item on February 5, 2013.

(ECF No. 265, at 2.)  While the Court appreciates that Mr. Baylor had not incurred a disciplinary

infraction within three years of filing his motion, (ECF No. 287, at 7), his prior infractions –

especially those for possessing a dangerous weapon – demonstrate that Mr. Baylor still presents

a threat to public safety which the Court must balance against his request for relief.

That said, the Court sees that Mr. Baylor has maintained family and community ties

despite his imprisonment, a factor that weighs in his favor.  His children, including his future

son-in-law, appear to communicate with him frequently and express ready willingness to help

him with financial, medical, and spiritual needs.  (ECF No. 271-1, at 1–3.)  His younger brother

– a former educator – wants to help him transition successfully into society.  (ECF No. 271-1, at

4.)  His cousin offers assistance with education and work placement in part because James

Baylor has developed a good relationship with her sons even while incarcerated. (ECF No. 261-

5.)  Such family support makes all the difference when released.

The Court also acknowledges that Mr. Baylor cites his engagement in BOP–sponsored

education and vocational opportunities to argue for compassionate release.[25]  (ECF No. 261, at

8.)  In *United States v. Martin*, the Fourth Circuit vacated and remanded the district court's

denial of both defendants' motions to reduce sentence because the district court failed to address

---

[25] These educational courses include Basic GED, Legal Research, Developing Leaders, anger management, criminal thinking, and reentry simulation.  (ECF No. 261, at 8.)  Mr. Baylor has also completed the BOP's 12 Steps to Recovery AA/NA.  (ECF No. 261, at 8.)

any new mitigating evidence when denying the motions. 916 F.3d at 397–98. The Fourth Circuit explained that if an individual is eligible for a sentence reduction, the district court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *Id.* at 397. Mr. Baylor displays progress in his rehabilitation, and this Court commends his efforts while noticing his plethora of continued transgressions. However, Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). While the Court acknowledges Mr. Baylor's participation in programs during his time in prison, these measures do not warrant his requested reduction in light of his disciplinary record while incarcerated, (ECF No. 266-1), and the BOP's classification of Mr. Baylor as having a "high risk [of] recidivism," (ECF No. 261-1, at 2).

Finally, the Court takes into account Mr. Baylor's longstanding medical needs. Indeed, on the day he was sentenced the Court ordered that he be designated to a facility capable of handling his medical conditions.

Despite his disciplinary infractions while imprisoned, the Court concludes that Mr. Baylor's community ties, his rehabilitative efforts, his medical needs, and the time remaining on his sentence support its decision to grant him a limited sentence reduction.

Therefore, taking all factors into consideration, the Court concludes that a reduction in James Baylor's sentence, from 514 months to 305 months' imprisonment, is warranted. All other terms and conditions of Mr. Baylor's original sentence will remain the same.

## IV.  Conclusion

For the reasons articulated above, the Court will grant in part the Motion for

Compassionate Release.  (ECF No. 261.)  Because the Court incorporated the impact of

Amendment 821 in evaluating Mr. Baylor's Motion for Compassionate Release, the Court will

deny as moot the 821 Motion.  (ECF No. 287.)

An appropriate Order shall issue.

Date: 6|20|2024

Richmond, Virginia

_____
/s/
M. Hannah Lauck
United States District Judge

24